**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

TABITHA HENARD,                              *
                                             *
            Plaintiff,                       *
v.                                           *
                                             *
CAROLYN W. COLVIN, Acting                    *          No. 2:14CV00091-JJV
Commissioner, Social Security               *
Administration,                              *
                                             *
            Defendant.                       *

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff, Tabitha Henard, appeals the final decision of the Commissioner of the Social Security Administration finding that she was no longer disabled, and, therefore, no longer eligible for supplemental security income benefits under Title XVI of the Act.  For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.      BACKGROUND**

On October 26, 2004, Ms. Henard was found disabled as of May 19, 2003.  However, on February 5, 2010, it was determined that, as of February 1, 2010, she was no longer disabled.  Ms. Henard's claims were denied upon reconsideration.  At Ms. Henard's request, an Administrative Law Judge ("ALJ") held a hearing on November 16, 2012, where Ms. Henard appeared with her lawyer. At the hearing, the ALJ heard testimony from Ms. Henard and a vocational expert ("VE").  (Tr. 942-972)

The ALJ issued a decision on April 25, 2013, finding that as of February 1, 2010, Ms. Henard was no longer disabled under the Act.  (Tr. 11-19)  On May 29, 2014, the Appeals Council denied Ms. Henard's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 9-11)

Ms. Henard, who was twenty-eight years old at the time of the hearing, has an ninth grade education and has never had a job.  (Tr. 950, 952)

## II.    DECISION OF THE ADMINISTRATIVE LAW JUDGE[1]

The ALJ noted that the most recent favorable medical decision finding Ms. Henard disabled, also known as a "comparison point decision" ("CPD"), was dated October 26, 2004. When the CPD was issued, Ms. Henard had the following impairments: schizophrenia with depressive features and borderline intellectual functioning.  (Tr. 21)  However, the ALJ found that as of February 1, 2010, Ms. Henard no longer had an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2]  (Tr. 22)

According to the ALJ, Ms. Henard has the residual functional capacity ("RFC") to do a full range of work at all exertional levels.  However, she can only understand, remember, and carry out simple tasks; cannot work in coordination or cooperation with coworkers to complete tasks; requires simple, direct, and concrete supervision; and her interaction with coworkers and the general public must be incidental to completion of work tasks.  (Tr. 24)  The VE testified that the jobs available with these limitations were housekeeper and laundry worker.  (Tr. 969)

After considering the VE's testimony, the ALJ determined that Ms. Henard could perform a significant number of other jobs existing in the national economy, and found that Ms. Henard was

---

[1]The ALJ followed the required sequential analysis to determine: (1) whether the claimant had a severe impairment; (2) whether there has been medical improvement; (3) if so, is the improvement related to the ability to work; (4) if no medical improvement, whether any exceptions apply; (5) whether the current impairments (or combination of impairments) are severe; (6) whether the current impairments (or combination of impairments) prevented the claimant from performing past relevant work; and (7) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy.  20 C.F.R. §§ 416.994(b)(5)(i)-(vii).

[2]20 C.F.R. §§ 416.925 and 416.926.

not disabled.

III.     ANALYSIS

    A.      Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision.[3]  Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision."[4]

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed "simply because some evidence may support the opposite conclusion."[5]

    B.      Ms. Henard's Arguments for Reversal

Ms. Henard asserts that the Commissioner's decision should be reversed because (1) the RFC underestimated the effects of her depression and anxiety since February 10, 2010; (2) the ALJ erred in relying on Dr. Williams's opinion; and (3) the ALJ erroneously considered the fact that Ms. Henard does not seek regular medical treatment.  (Doc. No. 11)

While there may be some evidence that Ms. Henard continues to have limitations related to her impairments, the ALJ's finding that she could perform a full range of work is supported by the record.[6]

---

[3]*Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g).

[4]*Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

[5]*Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

[6]*Davis v. Apfel*, 239 F.3d 962 (8th Cir. 2001) ("We may not reverse merely because substantial evidence also exists that would support a contrary outcome, or because we would have decided the case differently.").

1.      RFC and Regular Treatment

Ms. Henard argues that the RFC overstates her ability to work.  She also contends that the ALJ should not have considered her lack of regular treatment because she moved a few times and has had issues with her marriage, money, and transportation.

First, the ALJ properly considered the fact that Ms. Henard had "not sought regular mental health treatment" and had a history of failing to comply with her doctor's recommendations.[7]  (Tr. 27)  The ALJ noted that before being seen by Dr. Birmingham for a reassessment in January 2010, Ms. Henard had received no mental health treatment in over a year.  (Tr. 27-28)  The ALJ also considered that after Ms. Henard was informed on February 10, 2010, that her benefits were being cut off, she responded by initiating mental health treatment again.  (Tr. 28)  The lack of treatment the year or two before February 2010, followed by a brief surge, are things the ALJ properly considered when assessing the credibility of Ms. Henard's claims.  Furthermore, even after she resumed mental health treatment, Ms. Henard repeatedly missed appointments and was noncompliant. (Tr. 26) For example, she failed to follow up with mental health treatment from May 2011 until December 2011,  missed scheduled appointments in late December 2011 and again in January 2012, and "was lost again to treatment" from January 2012 until October 2012.  (Tr. 26, 28, 454, 457)

Additionally, notes from March 2011 indicate "no improvement" because Ms. Henard had "not been compliant with treatment plan and cancelled appointments."  (Tr. 403)  The notes also indicated that treatment "would be more effective if client was compliant."  (*Id.*)  Again, in

---

[7]*Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (An ALJ may weigh the credibility of a claimant's subjective complaints of pain by considering multiple factors, including whether or not the claimant seeks regular medical treatment.); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.").

May 2012, doctors noted that Ms. Henard had made little improvement because she "was not compliant with treatment plan."  (Tr. 450)

Though Ms. Henard claims that she was unable to afford treatment, she testified that her Medicaid was cut off for only a couple of months.  (Tr. 958)  She also advised her doctor that she could not afford a $10 co-pay; yet, Ms. Henard is a pack-a-day smoker. (Tr. 393, 405, 416, 967) Smoking is an expensive, ongoing habit that can be considered when weighing Ms. Henard's credibility.[8]

Second, the ALJ recognized Ms. Henard's treatment has been only conservative in nature[9] and her symptoms appear to be controlled with medication.[10]   For example, she has not had hallucinations since 2009, reported that her medications were "controlling some symptoms," and has not been hospitalized for psychiatric care since 2008. (Tr. 28, 431, 436) The ALJ concluded that "[o]verall, the nature of what treatment she has received since February 2010 is not consistent with debilitating mental impairments." (Tr. 28)

Third, the ALJ considered Ms. Henard's activities of daily living.   He noted that "[u]ntil recently, she lived alone in a house" and could "independently and effectively . . . perform a wide range of adaptive activities . . . ."  (Tr. 22)  These findings were supported by Dr. Birmingham's assessment, in which he found that Ms. Henard was able "handle her financial affairs and other

---

[8]*Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (rejecting claimant's position that he could not afford medication when "there is no evidence to suggest that he sought any treatment offered to indigents or chose to forgo smoking three packs of cigarettes a day to help finance pain medication.").

[9]*Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (finding that an ALJ may rely on the fact that a claimant has undergone only conservative treatment when evaluating the severity of the impairments).

[10]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("An impairment which can be controlled by treatment or medication is not considered disabling.").

affairs without assistance" and had "the ability to understand, to carry out and remember instructions and to respond appropriately to supervision, coworkers, and work pressure in a simple work setting." (Tr. 344)

> 2.    Opinions by State Agency Doctors

Ms. Henard asserts that the ALJ erred in relying on the opinions of Dr. Birmingham and Dr. Williams.  (Doc. No. 11)  She contends that Dr. Williams's opinion is entitled to little weight because he did not personally examine her and had only the benefit of Dr. Birmingham's evaluation. (Doc. No. 11)  However, Dr. Williams's opinion properly relied on Dr. Birmingham's previous assessment.

Dr. Birmingham saw Ms. Henard in January 2010 to determine whether she continued to be disabled.  He noted that Ms. Henard had not received counseling in months and was alert and fully oriented with all thinking processes and communication skills intact.  (Tr. 342, 344)  He noted that her claims of "visual hallucinations seem grossly exaggerated or represent outright malingering." (*Id.*)  Ultimately, he concluded that Ms. Henard was "exaggerating her complaints of psychosis and bipolar disorder . . . [and] her descriptions of auditory and visual hallucinations [were] unrealistic and unlikely."  (Tr. 343)  He noted that she had "probable moderate depression" but it was likely connected to having separated from her husband a month earlier.  (*Id.*)  Dr. Birmingham found that Ms. Henard was "passively cooperative" and likely suffered from "situational reactive depression . . . ."  (Tr. 344)

Finally, Ms. Henard argues that Dr. Williams's opinion is entitled to little weight because it did not consider records from 2010 to present.  This argument is without merit, since it was the ALJ's duty to consider the post-2010 records, which the ALJ did.  Those records bolstered the findings by Dr. Williams and Dr. Birmingham.

## IV.     CONCLUSION

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence.  There is sufficient evidence in the record as a whole to support the Commissioner's decision.

THEREFORE, the Court hereby affirms the final determination of the Commissioner and dismisses Plaintiff's Complaint with prejudice.

IT IS SO ORDERED this 7th day of January, 2015.

JOE J.  VOLPE
UNITED STATES MAGISTRATE JUDGE